UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAYCO PRODUCTS, LLC,

    Plaintiff,

vs                                                             Case No: 08-12273
                                                             Honorable Victoria A. Roberts

KINGDOM AUTO PARTS, LTD.,

    Defendant.
_____/

## ORDER

**I.    INTRODUCTION**

This matter is before the Court on Defendant's Motion for Sanctions (Doc. #7). Defendant asks the Court to assess sanctions against Plaintiff pursuant to Fed. R. Civ. P. 11(c)(2) for: (1) asserting trade dress infringement claims in bad faith and for an improper purpose, and (2) making factual contentions in support of those claims which Defendant says cannot have evidentiary support.

For the following reasons, Defendant's Motion is **DENIED** without prejudice.

**II.    BACKGROUND**

Plaintiff, Dayco Products LLC ("Dayco"), is a manufacturer and supplier of original and aftermarket automotive parts. Dayco says it is the owner of two Trademark Registrations: (1) No. 3,050,220 for "DAYCO" for "machine parts, namely pulleys," and (2) No. 1,647,865 for "DAYCO & Design" for among other things, pulleys and belt tensioners. Dayco also says it is the owner of two United States patents: (1) No.

1

6,682,452, entitled "Belt Tensioner with Pivot Bushing," and (2) No. 6,206,797, entitled "Belt Tensioner with Flexible Armplate." Dayco sells automatic belt tensioners and pulleys under the Dayco marks; each product is identified by a unique product number which is reflected on the product packaging. Dayco says the automatic belt tensioner products incorporate a distinctive, aesthetic, non-functional trade dress, which includes the overall configuration and appearance; the number and shape of ribs, recesses, cutouts and cavities reflected in the products' castings; and the inclusion of a flat spring. Dayco says that in or about mid-2007, Defendant, Kingdom Auto Parts Ltd. ("Kingdom"), began offering for sale and selling counterfeit versions of Dayco belt tensioners and pulleys for the automotive aftermarket; these versions use the Dayco marks, product numbers and trade dress. Plaintiff says these counterfeit versions are inferior products which are likely to cause confusion in the marketplace and damage to its reputation.

Plaintiff filed an eight-count Complaint against Defendant asserting claims of: Count I - Trademark Infringement, Count II - Trade Dress Infringement, Count III - False Designation of Origin, Count IV - Patent Infringement, Count V - Patent Infringement, Count VI - Common Law Trademark Infringement, Count VII, Common Law Unfair Competition, and Count VIII - Violation of Michigan's Consumer Protection Act.

Defendant filed this Motion for Sanctions challenging Counts II and VII of the Complaint. Defendant says Plaintiff's motive in bringing these claims is anti-competitive and a legal sham to drive Defendant from the automotive aftermarket.

### III. STANDARD OF REVIEW

The deferential abuse of discretion standard of review applies to "all aspects of a district court's Rule 11 determination." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384,

405, 110 L. Ed. 2d 359, 110 S. Ct. 2447 (1990). In the Sixth Circuit, the test for whether sanctions under Rule 11 are warranted is whether the conduct for which sanctions are sought was "reasonable under the circumstances." *Ridder v. City of Springfield,* 109 F.3d 288, 293 (6th Cir. 1997); *Runfola & Assocs. v. Spectrum Reporting II,* 88 F.3d 368, 372 (6th Cir. 1996). The question of whether an attorney's conduct is "reasonable" is a mixed question of law and fact. *Id.* The district court exercises wide discretion in determining whether an attorney's conduct is reasonable. *Ridder at 293.*

## IV. CASE LAW AND ANALYSIS

The central purpose of Fed. R. Civ. P. 11 is to deter baseless filings in District Court and thus, consistent with the Rule Enabling Act's grant of authority, streamline the administration and procedure of the federal courts. See Advisory Committee Note on Rule 11, 28 U.S.C. App., p. 576. Rule 11(b) says:

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Rule 11 imposes a duty on attorneys to certify that they conducted a reasonable inquiry and determined that any papers filed with the court are well-grounded in fact,

3

legally tenable, and "not interposed for any improper purpose." The reasonable inquiry under Rule 11 is not a one-time obligation. The plaintiff is imposed with a continuing responsibility to review and reevaluate his pleadings and where appropriate modify them to conform to Rule 11. *Herron v. Jupiter Transp. Co.*, 858 F.2d 332, 335 (6th Cir. 1988). An attorney who signs the papers without such a substantiated belief "shall" be penalized by "an appropriate sanction." Such a sanction may, but need not, include payment of the other parties' expenses. See Advisory Committee Note on Rule 11, Id. at 576.

The relevant sub-section pertaining to sanctions, Rule 11(c), says:

> (c) Sanctions.
>
> (1) *In General.* If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.
>
> *(2) Motion for Sanctions.* A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion. . .
>
> (4) *Nature of a Sanction.* A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.
>
> (5) *Limitations on Monetary Sanctions.* The court must not impose a monetary sanction:

4

> (A) against a represented party for violating Rule 11(b)(2); or
> (B) on its own, unless it issued the show-cause order under Rule 11(c)(3) before voluntary dismissal or settlement of the claims made by or against the party that is, or whose attorneys are, to be sanctioned.
>
> (6) *Requirements for an Order.* An order imposing a sanction must describe the sanctioned conduct and explain the basis for the sanction.

A Rule 11 monetary sanction is limited to "only those expenses directly caused by the offending filer." *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 406-07, 110 L. Ed. 2d 359, 110 S. Ct. 2447 (1990).

The Advisory Committee Notes to the 1983 Amendments to Rule 11 seem to have anticipated such a fact-based motion for sanctions:

> A party seeking sanctions should give notice to the court and the offending party promptly upon discovering a basis for doing so. The time when sanctions are to be imposed rests in the discretion of the trial judge. However, *it is anticipated that in the case of pleadings the sanctions issue under Rule 11 normally will be determined at the end of the litigation*, and in the case of motions at the time when the motion is decided or shortly thereafter. Fed. R. Civ. P. 11 (1983) (advisory committee notes) (emphasis added).

In *Kaplan v. Zenner*, 956 F.2d 149 (7th Cir. 1992), the Seventh Circuit considered the above passage from the advisory committee notes and concluded that "the situation contemplated by the committee notes is one in which the basis for factual allegations in pleadings cannot be determined until such time as the party claiming those facts has had an adequate opportunity to develop his proof."

Similarly, the Sixth Circuit cautioned that as a general proposition, a district court should be hesitant to determine that a party's complaint is in violation of Rule 11(b) when there is nothing before the court but the bare allegations of the complaint. *Tahfs v.*

*Proctor*, 316 F.3d 584, 594 (6th Cir. 2003). However, after discovery has been launched, if plaintiffs are still unable to plead a sufficient factual basis for the allegations made against defendants, the specter of Rule 11 sanctions should guide the actions of plaintiffs' counsel." *Michaels Bldg. Co. v. Ameritrust [o.*, 848 F.2d 674, 681 (6th Cir. 1988).

Defendant says Rule 11 sanctions are warranted at the pleading stage because Plaintiff's trade dress claims are asserted in bad faith and for an improper purpose. Defendant contends the product configuration of Plaintiff's belt tensioners is inherently functional; the use of ribs, recesses, cutouts and cavities in the aluminum die casting art and the use of ribs in plastic injection molding to provide mechanical strength, are functional expedients. Also, the spring is concealed from view. Defendant says because trade dress rights cannot subsist in functional articles, Plaintiff's belt tensioners are ineligible for trade dress protection. Defendant also says Plaintiff's assertion that its belt tensioners are not functional conflicts with its assertion of patent infringement claims on two utility patents covering its belt tensioners. Thus, Defendant says Plaintiff wrongly refused to withdraw its trade dress infringement claims after the 21-day safe harbor period.

Plaintiff says its trade dress infringement claim against Defendant satisfies all of the obligations imposed by Rule 11. Plaintiff says there is no inconsistency between the trade dress infringement claim and the patent infringement claims since they are based upon different aspects of Dayco's automatic belt tensioners. Plaintiff says Defendant cannot show that the non-functional trade dress at issue is dictated by the functions

Defendant advances, such as mechanical strength and minimization of weight. At a minimum, Plaintiff says the issue of functionality is a mixed question of law and fact that requires discovery. Likewise, Plaintiff says the trade dress infringement claim is supported by facts in its possession, as well as facts that will be developed further in the course of discovery.

Plaintiff also says that Defendant fails to advance any substantive argument regarding Dayco's purported "improper purpose." Plaintiff says its trade dress infringement claim is brought under 15 U.S.C. §1125(a)(1)(A), the same statute implicated in its other claims, and does not trigger any unique or extraordinary procedures or remedies that would not already be available to Plaintiff by virtue of its other claims. Thus, it cannot be said to needlessly increase the cost of litigation.

Counts II and VII of Plaintiff's Complaint allege that Defendant's use of Dayco's non-functional trade dress for belt tensioners is likely to cause mistake or confusion in the marketplace. Defendant specifically denies these allegations in its Answer. Thus, a central question will be whether the trade dress at issue is functional and, therefore, ineligible for protection. It will involve a determination of: Plaintiff's positions in prior litigation involving these patents and trademarks; statements regarding the functionality of the design made in Plaintiff's patent applications and in the course of procuring the patents; whether the configuration possesses secondary meaning; and, whether the product configuration is an ornamental, incidental or arbitrary aspect of the device.

As Plaintiff notes, a single product may have one or more functional components that are entitled to patent protection and other ornamental or non-functional components

7

that are entitled to trade dress protection. See *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 24 (2001). Hence, the issue of functionality cannot be determined on the basis of Defendant's contentions regarding functionality or by excerpts from product design books submitted as exhibits by Defendant.

Interestingly, both cases relied upon by Defendant in support of its Motion involved situations where Rule 11 sanctions were ultimately imposed due to lack of evidentiary support; however, in both instances sanctions were imposed after a lengthy discovery period, not at the inception of the lawsuit. See *B & H Medical, LLC v. ABP Admin., Inc.*, 354 F.Supp. 2d 746, 748 (E.D. Mich. 2005) and *Runfola & Associates, Inc.*, 88 F.3d 368, 373 ( 6th Cir. 1996).

As recognized by the Supreme Court, "Rule 11 does not establish a deadline for the imposition of sanctions. . ." *Cooter & Gell*, 496 U.S. 384, 398 (1990). The Advisory Committee Notes for the 1993 Amendments to Rule 11 make this point even more clearly:

> The revision leaves for resolution on a case-by-case basis, considering the particular circumstances involved, the question as to when a motion for violation of Rule 11 should be served and when, if filed, it should be decided. Ordinarily the motion should be served promptly after the inappropriate paper is filed, and, if delayed too long, may be viewed as untimely. *In other circumstances, it should not be served until the other party has had a reasonable opportunity for discovery*.
> Fed. R. Civ. P. 11 (1993) (advisory committee notes) (emphasis added).

The Court finds this motion should not be decided at least until after completion of discovery. In addition to the claims at issue here, Plaintiff's Complaint raises six other claims. The parties filed their joint discovery plan on July 28, 2008 and will

8

participate in discovery regarding those claims. Those claims involve the same belt tensioners; overlapping of evidence is likely. Thus, Defendant will not be prejudiced if the Court **DENIES** this Motion without prejudice. Defendant can refile if necessary.

**V. CONCLUSION**

Defendant's Motion is **DENIED** without prejudice.

**IT IS ORDERED.**

                                        /s/ Victoria A. Roberts
                                        Victoria A. Roberts
                                        United States District Judge

Dated: September 24, 2008

| |
|---|
| The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on September 24, 2008. <br><br> s/Linda Vertriest <br> Deputy Clerk |